30 F.3d 129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Marius Robert DEJONG, Plaintiff-Appellant,
v.
GENERAL ELECTRIC COMPANY, Defendant-Appellee.
 No. 93-1867.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 15, 1994.
Decided: July 14, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., Chief District Judge. (CA-92-2037-B)
 W. Michel Pierson, Baltimore, Maryland, for Appellant.
 Darrell Robert VanDeusen, Venable, Baetjer & Howard, Baltimore, Maryland, for Appellee.
 Stanley Mazaroff, Venable, Baetjer & Howard, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, SPROUSE, Senior Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal from a grant of summary judgment in defendant's favor by the United States District Court for the District of Maryland (Black, C.J.). Plaintiff-appellant Marius DeJong brought suit against defendant-appellee General Electric Company ("General Electric") for breach of an employment contract and negligent misrepresentation.
 
 
 2
 Beginning in August 1987, DeJong was employed by General Electric as an Ultrasound Applications Specialist. In March 1989, Kevin Semcken became DeJong's immediate supervisor. Later in the year Frank DiPasquale became Semcken's immediate supervisor.
 
 
 3
 There appears to be no dispute that DeJong was technically competent and that through the summer and early fall of 1989 he was considered a good employee. In September 1989, he was offered a position by another company, American Medical Imaging Corporation ("AMIC"). DeJong then told Semcken that he had accepted the position and was resigning from General Electric. Apparently, in an effort to retain DeJong as an employee, Semcken told DeJong that a position of Senior Applications Specialist, which DeJong had sought, was being created. Documentation prepared by Semcken in connection with a managerial award nomination states that he intended to recommend DeJong for the Senior Applications Specialist position. A voice mail recording reveals that before DeJong rejected the AMIC offer Semcken told DeJong that he was committed to obtaining the Senior Applications Specialist position for DeJong.
 
 
 4
 In the meantime, either Semcken or DiPasquale decided DeJong should be fired.[1] On December 12, 1989, DeJong was advised by Semcken that he could resign or would be terminated in January 1990. DeJong continued working at General Electric until the end of January 1990, at which time he commenced other employment at a lower rate of pay.
 
 
 5
 To decide this appeal, we must determine what the Supreme Court of Maryland likely would do. Maryland applies the employment-atwill doctrine, subject to certain exceptions. Under that employmentat-will doctrine an employer may fire an employee for any reason or no reason. Suburban Hosp., Inc. v. Dwiggins, 324 Md. 294, 303, 596 A.2d 1069, 1073 (1991) (finding employee entitled only to termination procedures specified in employee handbook; obligation to discharge in good faith not implied by grievance procedures). In order to create a contract of employment that allows firing only for just cause, the contract must be explicit. See id. at 309, 596 A.2d at 1076 (citing Sullivan v. Snap-on Tools Corp., 708 F.Supp. 750, 753 (E.D. Va.1989), aff'd, 896 F.2d 547 (4th Cir.1990)).
 
 
 6
 DeJong's argument is that in promising a promotion, General Electric impliedly promised him employment for a reasonable period or for an indefinite period, unless just cause for firing him existed. In Dwiggins, however, the Maryland court indicated that an implied promise is insufficient to convert at-will employment to employment for a definite period or subject only to firing for just cause. See id. at 303-07, 596 A.2d at 1074-75. Although the factual pattern is somewhat different here, we believe the Maryland courts would not abandon the principle that at-will employment must be contracted away explicitly, or not at all.
 
 
 7
 Furthermore, the employment application signed by DeJong clearly stated that "I understand that ... the Company may terminate my employment at any time for any reason in the absence of a specific written agreement to the contrary." As the district court held, in these circumstances, any implication arising from an oral statement regarding promotion could not change the essential character of DeJong's at-will employment. See Kardios Sys. Corp. v. Perkin-Elmer Corp., 645 F.Supp. 506, 511 (D. Md.1986) (citing Call Carl, Inc. v. B.P. Oil Corp., 554 F.2d 623, 630 (4th Cir.1977)) (finding plaintiff cannot recover damages for loss of orally created expectancy directly con trary to terms of written agreement).[2] For the same reasons, DeJong was not entitled to rely on an oral promise of promotion to support a claim of promissory estoppel with regard to firing.
 
 
 8
 We turn to DeJong's second claim. In order to establish negligent misrepresentation, a plaintiff must prove:
 
 
 9
 1. the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
 
 
 10
 2. the defendant intends that his statement will be acted upon by the plaintiff;
 
 
 11
 3. the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
 
 
 12
 4. the plaintiff, justifiably, takes action in reliance on the statement; and
 
 
 13
 5. the plaintiff suffers damage proximately caused by the defendant's negligence.
 
 
 14
 Weisman v. Connors, 312 Md. 428, 444, 540 A.2d 783, 791 (1988); Miller v. Fairchild Indus., 97 Md.App. 324, 345-46, 629 A.2d 1293, 1304 (Md. Ct. Spec.App.1993).
 
 
 15
 The negligent statements upon which DeJong bases this claim are those made by Semcken before DeJong rejected the AMIC offer. There is little evidence, however, that Semcken's statements were false. Semcken apparently did push through the new position description and also seems to have intended to push for a promotion at the time he recommended the managerial award for DeJong. Assuming that there is a bona fide dispute as to whether Semcken actually intended to recommend the promotion at the time DeJong was considering the AMIC offer, the court notes that, in Miller, 97 Md.App. at 346, 629 A.2d at 1304, the Maryland Court of Special Appeals held that a negligent misrepresentation claim does not include claims of intentional falsehood.
 
 
 16
 If, on the other hand, Semcken stated, not simply that he would recommend promotion, but that DeJong would get a promotion, Semcken did not have the power to make such a statement. Thus, such a statement would have been only opinion and predictive of future events. Such predictive statements are not actionable under a negligent misrepresentation theory. Id. at 342, 346, 629 A.2d at 1302, 1304. Therefore, we find no misrepresentation was made upon which DeJong could rely in rejecting the AMIC offer.
 
 
 17
 DeJong was an at-will employee. The terms of his at-will employment relationship were not changed by explicit statements to the contrary. No negligent misrepresentations were made to DeJong on which he was entitled to rely. Accordingly, the grant of summary judgment by the district court is hereby
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Semcken alleges that DeJong had poor interpersonal skills, as evidenced by negative comments to customers
 
 
 [2]
 While these cases deal with damages, the policy of giving maximum force to written agreements is applicable